IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CLYDE MCGRIFF,<br>Plaintiff,<br><br>v.<br><br>BRUCE FRONK,<br>Defendant. | Civil Action No. 12-0295<br>United States District Judge<br><br>United States Magistrate Judge<br>Cynthia Reed Eddy |

## REPORT AND RECOMMENDATION

### I. Recommendation

For the reasons set forth below, the Motion for Summary Judgment (ECF No. 12) should be granted and the case dismissed with prejudice.

### II. Introduction

Plaintiff Clyde McGriff filed this civil rights action on December 23, 2011, in the Court of Common Pleas of Beaver County, pursuant to 42 U.S.C. § 1983, against Defendant Bruce Fronk, his supervising parole officer with the Pennsylvania Board of Probation and Parole. The Complaint claims constitutional injury and damages arising from Officer Fronk's allegedly unconstitutional search of Plaintiff's vehicle and seizure of its contents on December 11, 2009, while it was parked in the lot at the Board of Probation and Parole's Beaver Falls office where Plaintiff had been summoned.

Plaintiff states that he "was an offender and parolee under supervision of the defendant." Complaint (ECF No. 1-2, ¶ 4). On December 11, 2009, Plaintiff states that he had parked his vehicle in the parking lot of Defendant's office (*Id.*, ¶ 6). He claims that various tools valued at $2600 were in the vehicle and that Defendant, "without a warrant or consent, searched plaintiff's

1

vehicle and wrongfully, willfully, and unlawfully seized [these tools] from [Plaintiff's] vehicle." (*Id.*, ¶¶ 7-8). Plaintiff's four count Complaint sets out the following claims pursuant to 42 U.S.C. § 1983 for alleged violations of his 4th, 5th, and 14th Amendment rights: Count I – Unlawful Seizure; Count II – Unconstitutional Deprivation of Property; Count III – Unconstitutional Taking; Count IV (incorrectly numbered as Count V) – Outrageous Conduct (ECF No. 1-2, Exhibit A).

Pursuant to 28 U.S.C. § 1441(a), Officer Fronk removed the case to this Court on March 9, 2012 (ECF No. 1) based upon federal question jurisdiction, 28 U.S.C. § 1331, and promptly filed a Motion to Dismiss (ECF No. 2) the Complaint as untimely. By Order of June 6, 2013, the Court denied the motion to dismiss without prejudice to Defendant raising this defense in a motion for summary judgment. Following discovery, Defendant filed a Motion for Summary Judgment (ECF No. 12) on November 8, 2012, which is now ripe.

After careful consideration, the Court agrees with Officer Fronk that he had reasonable suspicion to seize the tools from the truck, which is all that was required of him by the Fourth Amendment under the circumstances, and is entitled to qualified immunity. Accordingly, the Motion for Summary Judgment should be granted in Defendant's favor and the case dismissed with prejudice.

### III. Standards On Motions For Summary Judgment

Federal Rule of Civil Procedure 56(a) provides that summary judgment shall be granted if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[1] When applying this standard, the court must examine

---

[1] Pursuant to amendments to the Federal Rules of Civil Procedure in December 2010, the oft-cited summary judgment standard is now located in Rule 56(a) rather than 56(c). Although the wording of the standard has changed slightly, replacing the word "issue" with "dispute", this change does not affect the substantive standard or the applicability of prior decisions construing the standard. Fed.R.Civ.P. 56(a) advisory committee's note.

the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The moving party has the initial burden of proving to the district court the absence of evidence supporting the non-moving party's claims. *Celotex Corp. v. Catrett*, 477 U.S. 317, (1986); *UPMC Health Sys. v. Metropolitan Life Ins. Co.*, 391 F.3d 497, 502 (3d Cir. 2004). The burden then shifts to the nonmovant to come forward with specific facts showing a genuine issue for trial. Fed.R.Civ.P. 56(e); *Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 460–461 (3d Cir. 1989) (the nonmovant must present affirmative evidence-more than a scintilla but less than a preponderance-which supports each element of his claim to defeat a properly presented motion for summary judgment). The non-moving party cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument," *Berckeley Inv. Group. Ltd. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006), but must go beyond the pleadings and show specific facts by affidavit or by information contained in the filed documents (i.e., depositions, answers to interrogatories and admissions) to meet his burden of proving elements essential to his claim. *Celotex*, 477 U.S. at 322. See also *Saldana v. Kmart Corp.*, 260 F.3d 228, 232 (3d Cir. 2001). The non-moving party "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue." *Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005).

When considering a motion for summary judgment, the court is not permitted to weigh the evidence or to make credibility determinations, but is limited to deciding whether there are any disputed issues and, if there are, whether they are both genuine and material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The inquiry, then, involves determining "'whether

the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Brown v. Grabowski*, 922 F.2d 1097, 1111 (3d Cir. 1990), *cert. denied*, 501 U.S. 1218 (1991) (quoting *Anderson*, 477 U.S. at 251-52). "After making all reasonable inferences in the nonmoving party's favor, there is a genuine issue of material fact if a reasonable jury could find for the nonmoving party." *Pignataro v. Port Auth. of N.Y. & N.J.*, 593 F.3d 265, 268 (3d Cir. 2010) (citing *Reliance Ins. Co. v. Moessner*, 121 F.3d 895, 900 (3d Cir. 1997)).

IV. **Relevant Section 1983 Law and Application**

**Section 1983**

Section 1983 does not create substantive rights. It only allows plaintiffs to recover damages for violations of rights protected by other federal laws or by the United States Constitution. *Wilson v. Garcia*, 471 U.S. 261, 278 (1985); *DiBella v. Beachwood*, 407 F.3d 599, 601 (3d Cir. 2005) ("Title 42 U.S.C. § 1983 is not a source of substantive rights but a vehicle for vindicating rights conferred by the U.S. Constitution or by federal statute."). In order to recover in a section 1983 action, plaintiff must prove two essential elements: (1) defendants deprived the plaintiff of a right secured by the Constitution or laws of the United States; and (2) the deprivation of the federal right occurred under color of any statute, ordinance, regulation, custom, or usage of any state or territory. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 150 (1970); *Groman v. Manalapan*, 47 F.3d 628, 633 (3d Cir. 1995).

**Fourth Amendment**

The Fourth Amendment provides that citizens have the "right . . . to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, [which] shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or

4

affirmation, and particularly describing" the place, persons or things to be searched and seized. U.S. Const., Amend. IV. The Fourth Amendment prohibits *unreasonable* searches and seizures. *See Illinois v. Rodriguez*, 497 U.S. 177, 183 (1990); *Payton v. New York*, 445 U.S. 573, 586 (1980); *United States v. Price*, 558 F.3d 270, 277 (3d Cir. 2009).

A search within the meaning of the Fourth Amendment occurs when "an expectation of privacy that society is prepared to consider reasonable is infringed." *United States v. Jacobsen*, 466 U.S. 109, 113 (1984). The Fourth Amendment provides protection to people, not places, and as such, it protects people from unreasonable intrusions into an individual's privacy. *Katz v. United States*, 389 U.S. 347, 353 (1967). To determine whether a person has a reasonable expectation of privacy, the individual must show that: (1) the person exhibited an actual expectation of privacy, and (2) that expectation is one that society is prepared to recognize as reasonable. *Id.* at 363.

Subject to numerous recognized exceptions, the Fourth Amendment normally requires government officials to have both probable cause and a warrant to conduct a search or seizure. One of the recognized exceptions posits that, for probationers and parolees under supervision by the state, the requisite level of suspicion is reduced and probable cause is not required to sustain a search or seizure. In the probation and parole context, the warrant requirement and level of suspicion required to effectuate an arrest in a home are relaxed because the term and conditions of supervision are part of the continuum of state-imposed punishments. *Samson v. California*, 547 U.S. 843, 850 (2006); *Griffin v. Wisconsin*, 483 U.S. 868, 875–80 (1987). Special rules apply to agents supervising probationers and parolees that do not apply to police officers and normal citizens, including the ability to both search and seize based on reasonable suspicion.

In *Griffin*, a Wisconsin statute authorized probation officers to conduct warrantless searches of probationers' homes when there were "reasonable grounds" to believe that contraband would be found there. The Court found that the operation of a state's probation system presented "special needs" beyond law enforcement justifying an exception to the warrant and probable cause requirements of the Fourth Amendment. *See id.* at 873-74. The Court noted that to "a greater or lesser degree, . . . probationers (as we have said it to be true of parolees) . . . do not enjoy 'the absolute liberty to which every citizen is entitled, but only . . . conditional liberty properly dependent on observance of special [probation] restrictions.'" *Id.* at 874 (quoting *Morrissey v. Brewer*, 408 U.S. 471, 480 (1972)) (omission and alterations in original).

Plaintiff signed a waiver as parolee, PBPP 10-11, dated January 24, 2008, which states in pertinent part: "I expressly consent to the search of my person, property, residence without warrant by agents of the Pennsylvania Board of Probation and Parole. Any items, in the possession of which constitutes a violation of parole/reparole shall be subject to seizure and may be used as evidence in the parole revocation process." (*See* Appendix, (ECF No. 15-1, at 14, Exhibit C, Answer to Interrogatory No. 11). The supervisory relationship of Pennsylvania's probation and parole officers to offenders is spelled out in 61 Pa.C.S. § 6153, including that searches and seizures of the persons and property of offenders are authorized, and that a "property search may be conducted by an agent if there is reasonable suspicion to believe that the real or other property in the possession of or under the control of the offender contains contraband or other evidence of violation of the conditions of supervision." 61 Pa.C.S. § 6153(b) and § 6153(d)(2).

The Fourth Amendment does not require issuance of a warrant when the warrantless search is supported by reasonable suspicion and authorized by a condition of probation or parole.

6

*United States v. Knights*, 543 U.S. 112, 121 (2001) (unanimous) ("When an officer has reasonable suspicion that a probationer subject to a search condition is engaged in criminal activity, there is enough likelihood that criminal conduct is occurring that an intrusion on the probationer's significantly diminished privacy interests is reasonable."). *See also United States v. Baker*, 221 F.3d 438, 444 (3d Cir. 2000) (even in the absence of a statute authorizing warrantless arrests, "a parolee's car or home can be searched on the basis of reasonable suspicion alone."); *United States v. Williams*, 417 F.3d 373, 376 (3d Cir. 2005) ("when a parolee is involved and has signed a consent agreement such as the one at issue here, both sides of the balance are affected: the parolee's reasonable expectation of privacy is decreased and the government's reasonable need to monitor behavior is increased . . .", and as a result, "no more than reasonable suspicion" is demanded) (citing *Knights*, 534 U.S. at 119, 121 and *Griffin*, 483 U.S. at 871-72).

An analysis of reasonable suspicion considers, under the totality of the circumstances, whether the officer "has a particularized and objective basis for suspecting legal wrongdoing." *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (internal quotation marks omitted). Under the totality of the circumstances, whether state parole officers actually had reasonable suspicion or were "cajoled" by police into entering or seizing property is immaterial, as such an analysis would require an impermissible inquiry into the underlying motivations or "official purpose" of a parole officer conducting such a search. *See Williams*, 417 F.3d at 377–78.

Defendant's Concise Statement of Material Facts states the following details about the search and seizure:

> 1. Plaintiff had been paroled on a Burglary conviction in 2008 (See Exhibit A, [Supervision History, (ECF No. 15-1)], Commonwealth of Pennsylvania Board of Probations and Parole, PBPP-257H Form, Supervision History, December 16, 2009).

7

2. On December 3, 2009 when he reported to the parole officer, Davis Sedon, for a scheduled visit, Plaintiff tested positive for cocaine which is a violation of his conditions of parole. Plaintiff admitted to using drugs (*Id.*)

3. In light of this positive urinalysis and admission, he was sanctioned to enter and complete outpatient drug and alcohol treatment (*Id.*).

4. Sedon ordered Plaintiff to report to the parole office on December 10, 2009. Plaintiff did so. On December 10th he was issued a written instruction to report back to the office once again on December 11, 2009 at 8:00 A.M. for possible placement in an inpatient drug and alcohol program (*Id.*).

5. On December 11, 2009, at approximately 6:00 A.M., Sedon received a JNet (Pennsylvania Justice Network) active arrest warrant over the computer for Plaintiff for Receiving Stolen Property and Burglary charges in the City of Pittsburgh (*Id.*); (See Exhibit C, Defendant's Response to Plaintiff's first Set of Interrogatories, Question # 3 [(ECF No. 15-1, at 12-13)]

6. Sedon informed Defendant Fronk, his supervisor, of the active warrant (See Exhibit C, Question # 3 [*id.*]).

7. Plaintiff was arrested and City of Pittsburgh police arrived at the parole office (See Exhibit A);(See Exhibit C, Question #'s 3, 4, 13, 19 [(ECF No. 15-1 at 12-14,);(See Exhibit D, Defendant's Response to First Set of Admissions, Question #'s 3-5, 16 [(ECF No. 15-1, at 19, 21)].

8. City of Pittsburgh Detective Marks informed Defendant Fronk of the criminal charges against Plaintiff (See Exhibit B, Commonwealth of Pennsylvania Board of Probation and Parole, PBPP-257C Form, Criminal Arrest and Disposition Report, December 11, 2009);(See Exhibit C, Question # 3).

9. Marks informed Defendant that Plaintiff had stolen power and remodeling tools (See Exhibit C, Question #'s 3, 13).

10. Fronk noted on the PBPP-257C Form, Commonwealth of Pennsylvania Board of Probation and Parole, Criminal Arrest and Disposition Report, that the basis of the charges were as follows:

> [o]n 12/6/09 Zack Wooldrige and Nico Gomez reported that they were renovating a home on Kincaid Street, Pittsburgh, PA and had left for a few hours. When they returned, the rear door had

8

been kicked in and several of their tools had been stolen. Wooldrige contacted the Home Depot in East Liberty and confirmed that someone had returned the exact items that they had reported stolen. Home Depot provided a copy of the return, along with video surveillance and photo identification, Pa Driver's License No. [xx-xxx-xxx]. Detective Marks checked the license using JNET and confirmed the person to be Clyde McGriff.
(See Exhibit B).

11. Pittsburgh Police asked Defendant Fronk to take tools out of Plaintiff's truck (See Exhibit C, Question #'s 3);(See Exhibit D, Question #'s 4, 5).

12. He did so and turned the tools over to the Pittsburgh Police (See Exhibit C, Question #'s 3, 10, 19);(Exhibit D, Question #'s 20, 24, 30).

Plaintiff objects to many of these statements of fact as hearsay and inadmissible, but he does not dispute their substance. Nor does Plaintiff explain why this Court should not consider these facts in considering summary judgment, or offer any contradictory version of the facts and events leading up to the search of his vehicle and seizure of tools. Plaintiff cannot prove that Officer Fronk acted without reasonable suspicion to search his vehicle and seize the tools. With his diminished expectations of privacy and the heightened authority of a parole officer to search a parole and seize his property based upon reasonable suspicion, there is no question Plaintiff cannot sustain his burden of proving a Fourth Amendment violation.

### Qualified Immunity

The doctrine of qualified immunity insulates government officials who are performing discretionary functions from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The Supreme Court has established a two-part analysis that governs whether an official is entitled to qualified immunity. *Saucier v.*

9

*Katz*, 533 U.S. 194, 201 (2001): (1) whether the facts alleged by the plaintiff show the violation of a constitutional right; and (2) whether the right at issue was clearly established at the time of the alleged misconduct. *Id.; Kelly v. Borough of Carlisle*, 622 F.3d 248, 253 (3d Cir. 2010). Courts may address the two *Saucier* prongs in any order, at their discretion. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). If the plaintiff fails to satisfy either prong, the defendant is entitled to judgment as a matter of law. *See id.* at 232.

Plaintiff has failed to establish the violation of a constitutional right, and Defendant is entitled to official immunity.

### V. Conclusion

Based on the discussion above, it is respectfully recommended that the Court grant Defendant's Motion for Summary Judgment (ECF No. 12) and dismiss this case with prejudice.

In accordance with the Magistrates Act, 28 U.S.C. § 636(b)(1)(B) and (C), and the Local Rules for Magistrates, the parties are allowed fourteen (14) days from the date of service to file objections to this report and recommendation. Any party opposing the objections shall have fourteen (14) days from the date of service of objections to respond thereto. Failure to file timely objections will constitute a waiver of any appellate rights.

Cynthia Reed Eddy
United States Magistrate Judge

cc:

all counsel of record

Clyde McGriff
Gateway Rehab Braddock
426 George Street
Braddock, PA 15104

10